UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ERIC HERZOG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:24-CV-308-PPS-JEM |
| | ) |
| WHITING CLEAN ENERGY, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Eric Herzog alleges his rights under the terms of a collective bargaining agreement entered into by his union and his employer were violated in violation of the Labor Management Relations Act and state law. But there's a catch. He has not sued either his employer or his union. Instead, this case is against Whiting Clean Energy, Inc. ("WCE") who is not a signatory to the CBA. WCE moves to dismiss on the basis that Herzog failed to state a claim under the LMRA and that federal preemption bars his state tort claims. Because the LMRA is not a vehicle to sue a non-party to a CBA, the federal claim must be dismissed. Additionally, the LMRA preempts Herzog's state law claims, so they must be dismissed for the same reason.

**Background**

For purposes of this opinion, I take all well-plead facts as true. Mr. Herzog is employed by Nooter, which is a signatory to a CBA with Herzog's union, Pipe Fitters Local 597. [DE 17-1.] WCE is one of several companies that operates facilities for BP at BP's Whiting, Indiana oil refinery. WCE hired Nooter for pipe maintenance projects at

1

the refinery. Herzog worked on many of those projects.

During one project, an incident occurred on a WCE worksite that involved a potential safety violation. What precisely happened is murky. But we do know that Nooter investigated the incident and subsequently reprimanded Herzog and several co-workers. WCE evidently believed that Nooter went too easy on Herzog. Herzog alleges that WCE interfered in the disciplinary process by causing Nooter to increase the severity of its reprimand of Herzog and ban him from the entire BP facility. The ban was for a minimum of five years up to a lifetime ban. Herzog also alleges that WCE induced Nooter and BP to forcibly remove Herzog and his co-workers from the premises of BP's Whiting facility where they were at work on a different Nooter project. Herzog says WCE threatened to pull Nooter's contract with BP to ensure Herzog's ban remained in effect.

Herzog's Amended Complaint asserts three claims against WCE: (1) a federal claim under the LMRA, 29 U.S.C. § 185(a); (2) a state law claim for wrongful interference with an employment relationship; and (3) a state law claim for tortious interference with a contractual relationship.[1] [DE 17.] Importantly, Herzog has not brought a direct claim to enforce the terms of the collective bargaining agreement. This kind of "so-called hybrid 301 action" would require suit against both his union (Pipe Fitters Local 597) for a breach of the duty of fair representation and against his employer (Nooter) for a breach of the CBA. *See Nemsky v. ConocoPhillips Co.*, 574 F.3d

---

[1] Herzog originally sued in state court, but the Lake County Superior Court on February 22, 2024, granted WCE's motion to dismiss on the basis that Herzog's state claims were preempted by the LMRA because they required interpretation of his CBA. *See Herzog v. Whiting Clean Energy, Inc.*, Cause No. 45D05-2303-CT-000301 (Lake Super. Ct.).

859, 864 (7th Cir. 2009) (internal citation omitted). For reasons that are unclear, Herzog has chosen a different tack by pursuing WCE.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### I.     Herzog Fails to State a LMRA Claim

Herzog pleads his first claim for relief under Section 301 of the LMRA, which addresses "violation[s] of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a). As I just mentioned, Section 301 suits are "hybrid claim[s] consisting of both a breach-of-fair representation element and a breach-of-contract element." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) (quotation and citation omitted). This means that a successful Section 301 claim requires both a breach of the CBA *and* that his union breached its duty to fairly represent him. *Id*. This requirement

applies regardless of whether the plaintiff names his union as a defendant in his LMRA suit. *Id*.

At the outset, there is a basic question that needs to be answered: does the LMRA provide a vehicle for suit against a non-party to the CBA? Candidly, this is a hazy area of the law. The Seventh Circuit previously held that Section 301 "does not provide the basis for an LMRA claim against a nonparty to the underlying collective bargaining agreement." *Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir. 1982). The Seventh Circuit acknowledged some ambiguity existed in the language of the LMRA that authorizes federal jurisdiction for "violation of contracts *between an employer and a labor organization*" but ultimately sided with other courts that held this language referred to who may be a party to a Section 301 suit. *Id*. (citing 29 U.S.C. § 185(a) (emphasis added)). In *Loss*, the Seventh Circuit affirmed the district court's dismissal of a claim of tortious interference with a labor contract under Section 301 against an individual allegedly hired by the plaintiff's employer to induce decertification of the plaintiff's union because the defendant was not a party to the CBA. *Id*. at 944–48.

In reaching its conclusion, the Seventh Circuit distinguished cases from the Third and Ninth Circuits that permitted LMRA suits against non-parties as limited to situations where the non-party owed a fiduciary duty to the plaintiff. *Id*. at 947–48. The Circuit recognized that those decisions involved suits against trustees of pension funds established by CBAs for the benefit of employees. *Id*. at 948. The *Loss* court understood those decisions as advancing the "narrow principle" that "a non-party to the original instrument . . . is entitled to press for performance of obligations undertaken for his

4

benefit." *Id.* (citation omitted).

Two years later, the Seventh Circuit solidified this exception to the general rule concerning parties to Section 301 suits in *Chi. Area Vending Emps. Ass'n v. Custom Coffee Serv.*, No. 83-2079, 2123, 1984 WL 21995, at *9 (7th Cir. 1984). The case involved a multi-employer bargaining unit (the "association"), an employer member of that bargaining unit, and a union. The individual employer appointed the association as its collective bargaining agent. The association subsequently negotiated a CBA with the union that defined "employer" as the association and its members individually. The association later sued the union and the individual employer alleging that they reached a side agreement in violation of the terms of the CBA. The Seventh Circuit affirmed the district court's finding that it had Section 301 jurisdiction over the individual employer. *Id.* The Seventh Circuit reasoned that "though technically not a signatory to the [CBA]", the non-party employer was "arguably a party to it" because it was included in the definition of employer in the CBA and the dispute "is directly related to a provision in the collective bargaining agreement." *Id.*

Herzog cites case law that questions the breadth of *Loss*'s holding with respect to LMRA suits against non-signatories to a CBA. In *Hazel v. Curtiss-Wright Corp.*, the district court concluded that tortious interference with a labor contract under Section 301 of the LMRA was a cognizable claim against a non-party to the CBA. No. IP 86–909–C, 1990 WL 482125, at *6 (S.D. Ind. May 15, 1990). But the defendant in *Hazel* was a third-party corporation that owned shares and controlled board of director seats, through which it asserted influence, in the company that was a party to the CBA. *Id.* at

5

*3. The court concluded that *Loss* did not control because the Seventh Circuit decided *Loss* before the Supreme Court in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) expanded the understanding of LMRA's preemption of state tort claims. *Id.* at *7–10. The court reasoned that *Lueck* undermined that Seventh Circuit's assumption in *Loss* that independent state common law claims provide plaintiffs with a remedy against non-signatories for tortious interference. *Id.* at *9–10. In any event, the court concluded that the exception for fiduciary relationships recognized by *Loss* permitted the LMRA suit against the non-signatory defendant. *Id.* at *10.

I find *Hazel v. Curtiss-Wright Corp.* to be a well-reasoned and thoughtful opinion. But I will not discard *Loss*'s explicit holding prohibiting Section 301 LMRA suits against non-parties to a CBA in the absence of a contrary ruling from the Seventh Circuit. In fact, as recently as 2022 the Seventh Circuit in a footnote in *RiverStone Grp., Inc. v. Midwest Operating Eng'rs Fringe Benefits Funds* acknowledged that *Loss*'s holding prohibiting LMRA claims against non-signatories remains controlling law. 33 F.4th 424, 427 n.8 (7th Cir. 2022) (recognizing that "a Section 301 suit can be brought only against the parties to the contract" and noting an exception for trust fund beneficiaries not applicable here); *see also Teamsters Nat. Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003) ("Since only parties to a contract can violate it, a plaintiff cannot possibly allege that a non-party violated a collective bargaining agreement; therefore, the plaintiff cannot assert jurisdiction under § 301 to bring a federal action against the non-party.").

The general rule that Section 301 does not apply to non-signatories to a CBA

6

continues to be the law of this Circuit. And unlike in *Hazel*, as recognized by *Loss* itself, Herzog has not alleged that the fiduciary duty exception applies to exempt his case from this general rule. In other words, there is no allegation that WCE is somehow in a fiduciary relationship with Nooter or exerts control over Nooter as a parent might over a wholly owned subsidiary, although it appears that WCE exerts economic power over Nooter. But no case that I can find stretches the fiduciary relationship exception to such a situation. Thus, Herzog's Section 301 LMRA claim must be dismissed for failure to state a claim for relief.

## II. Herzog's State Law Claims are Preempted by the LMRA

Herzog argues that his remaining state tort claims, which are premised on WCE's alleged interference, are "independent" of the CBA and "require not even a reference to the terms of the CBA." [DE 27 at 4–5.] This is in tension with his LMRA claim, which he says requires "interpretation of the CBA, including the provisions governing disciplinary measures, workplace access, and employee rights." [DE 17 at ¶17.] If Herzog's remaining state law claims are indeed independent of his LMRA claim, then I would decline to exercise supplemental jurisdiction over them because they would be the only remaining claims in his suit. On the other hand, if his state law claims do require interpretation of his CBA, then they are preempted by the LMRA. In that case, as above, Herzog could not state a claim under the LMRA because WCE is a non-party to the pertinent CBA. Either way, Herzog's state claims cannot continue in this Court.

Section 301 of the LMRA preempts state law claims that require interpretation of

a collective bargaining agreement. *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 289 (7th Cir. 2001) (en banc). Although the LMRA's preemptive effect is broad, "not every dispute concerning employment or tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301." *Allis-Chalmers Corp.*, 471 U.S. at 211. For example, claims that merely require reference to the CBA are not preempted. *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d at 289; *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished[.]").

Rather, preemption is triggered when a claim is founded on rights created by a CBA and when the resolution of the claim depends on the meaning of the terms of a CBA. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). Put another way, a state claim is preempted if it is substantially dependent upon an analysis of the terms of the CBA. *Id*. This is true "whether such questions arise in the context of a suit for breach of contract" or, as is the case here, "in a suit alleging liability in tort." *Allis-Chalmers Corp.*, 471 U.S. at 211. "If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Id.* at 213.

During the June 30, 2025, oral argument on WCE's Motion to Dismiss, I asked WCE's counsel to identify which section of the CBA Herzog's state claims required the Court to interpret. WCE pointed to Article V, Section 7, which states "No Employer shall employ an Employee . . . under any terms and conditions less favorable to such Employee than are expressed in this Agreement." [DE 17-1 at 23.] Herzog referenced

8

this provision in his Amended Complaint. [DE 17 at ¶19.] WCE's counsel suggested Herzog's state law claims allege that Nooter, in response to WCE's pressuring, treated him "less favorabl[y]" than other employees by imposing heightened discipline upon him in violation of his CBA. According to WCE, the Court must therefore interpret the CBA's provisions governing discipline to analyze Herzog's state law claims.

The Supreme Court instructs courts to analyze the elements of the state law claim at issue to determine whether those elements "require construing the collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988); *Allis-Chalmers Corp.*, 471 U.S. at 216–18. Here, Herzog asserts tortious interference with an employment relationship and tortious interference with a contractual relationship under Indiana law. In the context of a First Amendment issue, the Seventh Circuit commented that these Indiana torts "require[] review of the . . . the employer-employee relationship, *and the contents of the employee's contract.*" *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 945 (7th Cir. 2022) (emphasis added). Drilling down to the elements of these claims confirms this conclusion.

Herzog's claim for tortious interference with contractual relationship is preempted by the LMRA. Under Indiana law, tortious interference with a contractual relationship requires: "(1) that a valid and enforceable contract exists; (2) the defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Duty v. Boys and Girls Club of Porter Cnty.*, 23 N.E.3d 768, 774 (Ind. Ct. App. 2014). To satisfy the third element

9

of this claim, I must analyze whether WCE induced Nooter to breach Herzog's CBA by escalating his punishment for the alleged safety error. Analysis of that breach (and the justification for inducing that breach) will necessarily require me to interpret the terms of Herzog's CBA that govern discipline. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (finding the LMRA preempted a claim under Illinois law for tortious interference with contract that includes similar elements); *Dixon v. Borgwarner Diversified Transmission Prods., Inc.*, No. 1:03-CV-00945-SEB-VS, 2004 WL 801270, at *4 (S.D. Ind. Mar. 29, 2004) (finding the LMRA preempted a claim of tortious interference with contract under Indiana law because "the trier of fact would have to establish the rights to which [plaintiff] was entitled under the [CBA].").

The LMRA also preempts Herzog's similar claim for tortious interference with employment relationship, which requires: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with that relationship." *Denman v. St. Vincent Med. Grp., Inc.*, 176 N.E.3d 480, 496 (Ind. Ct. App. 2021). This claim does not include an element of the defendant's inducement of breach of contract, but like tortious interference with contract the claim requires "absence of justification" and analysis of the wrongfulness of WCE's alleged interference with Herzog's relationship with Nooter. This once again requires an understanding of the disciplinary protections Herzog is entitled to under this CBA. Accordingly, the outcome for Herzog is the same.

In theory, there might be a cause of action for interference with employment relationship by a third-party that would not require interpretation of the terms of a CBA. *See Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 726 (7th Cir. 2000) ("The employer would not be involved in the suit, and the terms of the collective bargaining contract—even the fact that there *was* such a contract—would be irrelevant.") (emphasis in original). But that is not Herzog's case. Herzog alleges WCE pressured Nooter to increase Herzog's reprimand and ban him from BP's site. [DE 17 at ¶¶30, 32.] Again, this analysis requires an understanding of whether WCE's intervention was wrongful or without justification and whether Herzog's CBA protected him from the disciplinary actions Nooter took. *See Kimbro*, 215 F.3d at 727.

Because both of Herzog's state law claims require interpretation of his CBA, Section 301 of the LMRA preempts his claims and converts them into Section 301 claims. But as discussed above, Herzog cannot state a LMRA claim against a non-party to his CBA such as WCE. Accordingly, his state law claims fail to state a claim too. The Court acknowledges (and shares) Herzog's frustration that the state of LMRA jurisprudence leaves him without remedy for these claims against WCE in both federal and state court. But that is the state of the law in the Seventh Circuit. As the Seventh Circuit notes, "[w]e can only acknowledge that this 'remedial gap' exists, and hold that we cannot create a remedy where precedent forbids us from doing so." *Healy*, 804 F.3d at 845.

**Conclusion**

For the aforementioned reasons, Whiting Clean Energy, Inc.'s Motion to Dismiss

[DE 22] is **GRANTED**. Herzog's Amended Complaint [DE 17] is **DISMISSED WITH PREJUDICE** against Defendant Whiting Clean Energy, Inc. The Clerk shall enter judgment in favor of the Defendant and against the Plaintiff accordingly.

**SO ORDERED.**

ENTERED: July 16, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT